**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ALAN H. CATALAN, | : Chapter 7 |
| Debtor. | : Bky. No. 17-13225 ELF |
| VISION WEST, INC., | : |
| Plaintiff, | : |
| v. | : |
| ALAN H. CATALAN, | : Adv. No. 17-0210 ELF |
| Defendant. | : |

# M E M O R A N D U M

## I. INTRODUCTION

In 2013, Vision West, Inc. ("Vision West") sued Addison Dane, Inc. ("Addison Dane") in the Court of Common Pleas, Lancaster County ("the State Court") for breach of a contract pursuant to which Vision West financed Addison Dane's purchase of inventory for its business operations. In the same lawsuit, Vision West sued Alan H. Catalan ("the Debtor") to enforce his personal guaranty of the Addison Dane-Vision West contract.

In 2017, the State Court entered a default judgment in the amount of $132,832.11 as a sanction against both the Debtor and Addison Dane due to discovery misconduct. The Debtor subsequently filed this chapter 7 bankruptcy case.

Vision West commenced this adversary proceeding, seeking to have the default judgment against the Debtor determined nondischargeable under 11 U.S.C. §523(a)(6) as a debt for willful and malicious injury.

1

Presently before the court is Vision West's motion for summary judgment. The Debtor is currently pro se and has not participated in the proceeding since his former counsel withdrew his appearance (with the court's consent) in January 2018, prior to the filing of the Vision West's summary judgment motion.

Vision West's motion establishes that there are no undisputed facts. In light of those facts, I conclude that the Debtor and Vision West each is entitled to partial summary judgment.

Most of the subject debt arises from a simple breach of contract and is therefore dischargeable. However, Vision West has shown that the portion of the debt attributable to attorney's fees incurred in seeking the Debtor's discovery compliance is "for willful and malicious injury … to [Vision West's] property." See 11 U.S.C. §523(a)(6). Therefore, I will enter an order determining that $17,365.00 is nondischargeable and that the balance of the $132,832.11 debt is dischargeable.[1]

## II. PROCEDURAL HISTORY

The Debtor filed this voluntary chapter 7 bankruptcy case on May 4, 2017. On July 31, 2017, Vision West filed this adversary complaint seeking a determination that the debt is nondischargeable pursuant to 11 U.S.C. §523(a)(6).

---

[1] In resolving a motion for summary judgment, a court may grant judgment in favor of the non-moving party if the undisputed facts demonstrate that the party is entitled to judgment as a matter of law. See, e.g., Hammersmith v. TIG Ins. Co., 480 F.3d 220, 248 n.20 (3d Cir. 2007); Prusky v. Reliastar Life Ins. Co., 2005 WL 226148, at *4 (E.D. Pa. Jan. 26, 2005); In re Styer, 477 B.R. 584, 589 (Bankr. E.D. Pa. 2012); see also Duchesneau v. Cornell Univ., 2011 WL 5902216, at *6 n.9 (E.D. Pa. Nov. 23, 2011) (in its discretion, a court may choose to reach the merits of a summary judgment motion, even if the motion is unopposed); Adefila v. Select Specialty Hosp., 28 F. Supp. 3d 517, 526 (M.D.N.C. 2014) (courts have an obligation to review an unopposed dispositive motion on the merits).

The Debtor filed an answer to the complaint on September 8, 2017. The parties' attempt at mediation failed. Thereafter, the Debtor's attorney was granted leave to withdraw as counsel on January 17, 2018.[2]

One month later, on February 16, 2018, Vision West filed a motion for summary judgment ("the Motion"), which I denied for Vision West's failure to follow rules of court pertaining to notice and service. (Doc. # 32). On April 26, 2018, Vision West renewed its Motion. (Doc. #s 34, 35, 37).

After Vision West certified that the Debtor had not responded to the Motion, I ordered Vision West to file a supplemental memorandum of law addressing:

- whether the entry of a judgment on an otherwise dischargeable debt as a litigation sanction transforms the dischargeable debt into a nondischargeable debt under 11 U.S.C. § 523(a)(6).

- whether the underlying contract between the Plaintiff and the Debtor included an attorney's fee-shifting provision.

Vision West timely filed a supplemental brief on June 19, 2018, addressing the first issue and advising the court that the underlying contract contained a fee-shifting provision. ("Plaintiff's Supp. Memo," Doc. # 44). Therefore, the Motion is ready for decision.[3]

---

[2] In the motion to withdraw, the Debtor's former counsel asserted that the attorney-client relationship was irretrievably broken. Former counsel represented, inter alia, that the Debtor failed to appear for the scheduled mediation and had not responded to multiple e-mails, letters and phone calls.

[3] As stated in Part I, in an uncontested motion, I am entering judgment for Vision West in part. Doing so without further notice and hearing does not prejudice Vision West.

In this case, Vision West had the unopposed ability to build whatever record it wanted in order to "put its best foot forward." Leyva v. On the Beach, Inc., 171 F.3d 717, 720 (1st Cir. 1999) (quoting Jardines Bacata, Ltd. v. Diaz–Marquez, 878 F.2d 1555, 1561 (1st Cir. 1989)). Every fact that Vision West introduced was an undisputed fact. There are no obvious gaps in Vision West's presentation of its case – it appears to have marshaled the best evidence for its position. As explained later in this

**(fn. cont.)**

## III.  SUMMARY JUDGMENT STANDARD

I have previously discussed the legal standard employed in deciding a motion for summary judgment, including the proper application of the burden of proof:

> [S]ummary judgment must be granted to a moving party when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is appropriate if there are no disputed issues of material fact and the undisputed facts would require a directed verdict in favor of the movant.
>
> On a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party. However, if it appears that the evidence is so one-sided that one party must prevail as a matter of law, the court shall enter judgment accordingly in that party's favor.
>
> Proper resolution of a motion for summary judgment also requires consideration of the parties' respective burdens.
>
> If the moving party bears the burden of proof, the movant must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. Evidence must establish all the essential elements of its case on which it bears the burden of proof at trial, [such that] no reasonable jury could find for the non-moving party. If the movant (with the burden of proof at trial) meets this initial burden, the responding party may not rest on the pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial.

In re Universal Mktg., Inc., 541 B.R. 259, 279–80 (Bankr. E.D. Pa. 2015) (citations and quotations omitted).

---

**(fn. cont.)**
Memorandum, the summary judgment record Vision West generated has reduced the decisive issue to one of pure law: the nature of its sanctions judgment that was entered pursuant to Pa. R. Civ. P. 4019.  I have already provided Vision West the opportunity to address that issue in its supplemental brief.

4

## IV. UNDISPUTED FACTS

The material undisputed facts in this proceeding are:[4]

1. After October 2012, Addison Dane was a corporation wholly owned by the Debtor. (Compl. ¶ 6).

2. Addison Dane sold eyeglasses under the name "World Spectacles." (Compl. ¶ 7).

3. From August 2012 to March 2013, Vision West paid the invoices for Addison Dane's purchase of inventory, with Addison Dane contractually obligated to repay Vision West. (Compl. ¶¶ 7-9).

4. Addison Dane and Vision West's credit relationship was guaranteed by the Debtor and Heather Estrada ("Estrada"). (Id.).

5. In July 2013, Vision West commenced an action in the State Court against Addison Dane, the Debtor, and Estrada (the "State Court Defendants") seeking to recover $79,620.08 that Vision West claimed was due and owing on the credit that Vision West extended to Addison Dane. (Aff. ¶4).

6. The State Court Defendants defended against the State Court complaint by contending that the $79,620.08 represented an amount that Addison Dane directly paid to the vendors rather than money owed to Vision West. (Compl. ¶14).

7. At a pre-trial conference held on April 1, 2015, the State Court directed the parties to exchange information pertaining to the claimed debt. (Aff. ¶11).

---

[4] I draw these facts from three (3) main sources. First, the adversary complaint provided information, which is not technically necessary to resolve this motion, but is useful as background. Second, Vision West attached to the Motion the Affidavit of Vision West's Counsel Thomas Reilly ("the Affidavit" or "Aff."). (Doc. #35). The information contained in the Affidavit would have been admissible at trial, so it is properly part of the undisputed factual record. Third, I took judicial notice of the docket, motions, and orders of the State Court proceeding in Vision West Inc. v. Alan Catalan, No. CI-13-07048 ("the CP Docket").

8. Vision West complied with the court's directive but the State Court Defendants did not produce any documents. (Aff. ¶¶ 11-12).

9. On February 29, 2016, the State Court entered an order directing the State Court Defendants to provide complete answers to the Vision West's Interrogatories and to produce all responsive documents within ten (10) days of the order. (Aff. ¶19).

10. On March 15, 2016, the court granted the State Court Defendants' counsel's motion to withdraw as counsel. (Aff. ¶20).

11. As of June 2016, neither Addison Dane, the Debtor, nor Estrada provided documents as required by the February 29, 2016 Order. (Aff. ¶21).

12. On July 16, 2016, Vision West filed a motion to sanction the State Court Defendants for failing both to comply with the February 29, 2016 Order and properly respond to the discovery previously served. (Aff. ¶22).

13. At the Debtor's request, the hearing on the motion for sanctions, originally scheduled for September 26, 2016, was postponed to October 4, 2016. (Aff. ¶32).

14. The hearing was postponed again to November 21, 2016 due, in large part, to the correspondence between the Debtor and Vision West's counsel in which the Debtor asserted that he could produce a document showing the payments Addison Dane allegedly made to its vendors. The court then rescheduled the hearing to January 20, 2017. (Aff. ¶¶ 36-37).

15. The Debtor appeared at the January 20, 2017 hearing and represented to the State Court that the amount of $79,620.08 (which was the amount sought by Vision West) was paid to Vision West by cashier's check and that the Debtor was engaged in efforts to obtain a copy of the check and would produce it. (Aff. ¶42).

16. By order dated January 23, 2017, the State Court directed the Debtor to produce the cashier's check within fifteen (15) days of the date of the order or suffer sanctions, including the entry of a default judgment or a finding of contempt. (Aff. ¶43).[5]

17. On February 24, 2017, Vision West filed a motion for sanctions against the Debtor for failing to produce the cashier's check. This motion sought the entry of a judgment for $132,832.11: the $79,620.08 due, $27,867.03 in other damages plus $25,345.00 in attorney's fees. (Aff. ¶47 & Ex. K thereto).[6]

18. On April 25, 2017, the State Court entered judgment in the amount of $132,832.11 against the Debtor as a sanction for his failure to comply with the order of January 23, 2017. (Aff. ¶48).[7]

19. Nothing in the record suggests that, in entering its judgment, the State Court imposed any monetary sanction against the Debtor in excess of the attorney's fees requested by Vision West pursuant to the fee-shifting provision in its contract with Addison Dane.

---

[5]   This is confirmed by the C.P. Docket.

[6]   The State Court motion of sanctions did not explain the basis for the additional amount added to the original $79,620.08 claim. From the context, I infer that it represented pre-judgment interest.

[7]   The Affidavit indicates that this order entering judgment was attached as an exhibit. It was not. My finding that this fact is undisputed is based upon the content of the C.P. Docket.

## V. DISCUSSION

### A. 11 U.S.C. §523(a)(6): Legal Standards

**1.**

A creditor objecting to the dischargeability of a debt bears the burden of proof. In re Cohn, 54 F.3d 1108, 1114 (3d Cir. Pa. 1995). A creditor must show, by a preponderance of the evidence, all essential elements demonstrating that a claim is nondischargeable. Grogan v. Garner, 498 U.S. 279, 291 (1991).

Debts incurred for "willful and malicious injury by the debtor to another entity or to the property of another entity" are nondischargeable. 11 U.S.C. §523(a)(6). Willful injury means "deliberate or intentional injury, not [just] a deliberate or intentional act that leads to injury." In re Coley, 433 B.R. 476, 497 (Bankr. E.D. Pa. 2010) (citing Kawaauhau v. Geiger, 523 U.S. 57 (1998)). Malice is defined differently for §523(a)(6) purposes than in most other contexts. Malice, for nondischargeability purposes, does not require subjective ill will. In re Wooten, 423 B.R. 108, 130 (Bankr. E.D. Va. 2010) (citations omitted); In re Vidal, 2012 WL 3907847, at *28 (Bankr. E.D. Pa. Sept. 7, 2012). It only requires wrongful conduct which is without just cause or excuse. 4 Collier on Bankruptcy ¶ 523.12 [2] (Alan N. Resnick, Henry J. Sommer eds., 16th ed. 2018).

A debt arising out of a standard contract breach – even an intentional breach – is not willfully and maliciously incurred within the meaning of 11 U.S.C. §523(a)(6). See, e.g., Lockerby v. Sierra, 535 F.3d 1038, 1040 (9th Cir. 2008) ("an intentional breach of contract cannot give rise to non-dischargeability under §523(a)(6) unless it is accompanied by conduct that constitutes a tort under state law"); see also Paige v. Lerner Master Fund, LLC, 584 B.R. 502, 509 (M.D. Pa. 2018); In re Kamps, 575 B.R. 62, 84 & n.13 (Bankr. E.D. Pa. 2017).

**2.**

In some cases, the nature of a debt may change form over time. For example, a plaintiff may sue a defendant on a fraud theory; if the parties later reach a compromise, the defendant's obligation under the settlement is no longer grounded in tort, but is based on contract.

For nondischargeability purposes in bankruptcy cases, however, the technical form of a debt does not determine whether it is dischargeable or nondischargeable. The Supreme Court has held that dispute resolution mechanisms that alter the form of a debt for other purposes do not change the character of the debt for dischargeability purposes. See Archer v. Warner, 538 U.S. 314, 320 (2003). Rather, the bankruptcy court must make the "fullest possible inquiry" into the underlying nature of the original debt. Id. at 321. The court must look "into the true nature of the debt" to find out if it "aris[es] out of conduct specified in" a discharge exemption, regardless of the current form of the debt. Brown v. Felsen, 442 U.S. 127, 138 (1979).

The Supreme Court applied this principle to look past the form of a stipulated judgment in Brown and a settlement agreement in Archer. The discussion in those cases makes clear that the "true nature" inquiry must be used on all debts, regardless of their current form.

### B. Framing the Issue Presented

Vision West contends that the State Court's order entering judgment against the Debtor as a sanction for his discovery misconduct created a debt for willful and malicious injury that is nondischargeable pursuant to §523(a)(6). Vision West does not rely on a novation theory, the likes of which failed in Archer and Brown. It concedes that the sanction order cannot "convert the character of the underlying debt," but instead argues that the State Court order "created a

nondischargeable debt essentially measured by the amount of the underlying claim." (Plaintiff's Supp. Memo. at 2).

The issue then boils down to a simple question: what did Vision West get when its motion for sanctions was granted by the State Court? If it obtained nothing more than a default judgment on its breach of contract claim, then that underlying debt retained its character as dischargeable debt for a simple breach of contract. However, if the sanctions order created a distinct, sanction-based debt, then that debt may be nondischargeable if Vision West can show that the debt was derived from a willful and malicious injury.

### C. The Nature of the Debt Created by the Sanction Granting Vision West a Default Judgment

**1.**

Vision West obtained a judgment against the Debtor by bringing a motion for sanctions under Pa. R. Civ. P. 4019. This Rule permits a court to issue orders for discovery misconduct, such as failure to answer interrogatories or produce documents in response to a formal discovery request. Pa. R.C.P. 4019(a)(1)(i), (vii). The Rule includes a menu of remedies if a Rule 4019(a) order is not obeyed. In order of severity, the sanctioning court may:

- Designate facts as established, against the interest of the disobedient party;
- Prevent a disobedient party from introducing certain evidence;
- Prevent a disobedient party from supporting or opposing certain claims or defenses;
- Strike pleadings – or parts of pleadings – by the disobedient party;
- Impose punishment for contempt;

- Enter a judgment of non pros or a default judgment against the disobedient party.

Pa. R. Civ. P. 4019(c)(1)-(5).

The seriousness of the discovery misconduct guides the seriousness of the sanction, so that the punishment fits the crime. <u>Pride Contracting, Inc. v. Biehn Const., Inc.</u>, 553 A.2d 82, 83-4 (Pa. Super. Ct. 1989). In determining whether a discovery violation warrants the severe sanction of dismissal or entry of a default judgment, a court must consider, <u>inter alia</u>, "the nature and severity of the violation, **<u>the defaulting party's willfulness or bad faith</u>**, prejudice to the opposing party, the ability to cure the prejudice, and the importance of the precluded evidence in the light of the failure to comply." 9A <u>Goodrich Amram</u> 2d § 4019(c):9 (Westlaw 2018) (emphasis added). Sanctioning courts "must strike a balance between the procedural need to move the case to a prompt disposition and the substantive rights of the parties." <u>Gonzales v. Procaccio Bros. Trucking Co.</u>, 407 A.2d 1338, 1341 (Pa. Super. Ct. 1979). Aside from the contempt power – which is inherently part of every judge's sanctions toolkit – Rule 4019 sanctions cut off a disobedient party's ability to use some aspects of the normal civil court process.

If certain responses or documents have been withheld, Rule 4019 permits the court to force the disobedient party to do without them, and possibly lose the case. If the misconduct implicates an entire pleading, the disobedient party must do without, and possibly lose the case. In the most serious scenario, the misconduct is so pervasive that entry of a judgment is in order. The entry of a judgment under Rule 4019 is the most drastic remedy, because it immediately cuts off the disobedient party's right to proceed further in any aspect of the case. This most extreme sanction eliminates the party's right to engage in the case, which inevitably leads to the party's

11

losing the case exactly as if no appearance were made and no defense offered. The result is a default judgment on the underlying claim.

Sanctions judgments are treated according to the same rules as standard default judgments, and courts equate them. Fox v. Gabler, 534 Pa. 185, 189 (1993); In re Bertolotti, 470 B.R. 356, 361 (Bankr. W.D. Pa. 2012).

This discussion demonstrates that default judgments entered as a sanction are just what they claim to be: default judgments on the underlying claim, not a new debt. [8]

**2.**

Debts arising from intentional violation of a court order, or from a contempt sanction, are frequently held to be willful and malicious. See In re Williams, 337 F.3d 504, 511–13 (5th Cir. 2003); In re Nangle, 274 F.3d 481, 484 (8th Cir. 2001). Courts acknowledge that, while these debts are not willful and malicious per se, they frequently arise in a fact scenario which involves willful and malicious conduct. See In re Musilli, 379 F. App'x 494, 499 (6th Cir. 2010) (nonprecedential).

Rule 4019 includes provisions allowing the court to shift reasonable expenses, including attorney's fees, to a disobedient party. See Pa. R. Civ. P. 4019(d), (e), (f), (g) (allowing fee-

---

[8] There is one respect in which sanctions judgments differ from standard default judgments – to Vision West's detriment. A sanctions judgment cannot be opened by the court's equitable powers. It can only be attacked by a motion for reconsideration (if damages are not yet entered) or appeal (if damages have been entered). Livolsi v. Crosby, 344 Pa. Super. 34, 37 (1985). "The doors of equity" are closed to a sanctioned party, because that party cannot satisfy a precondition to equitable relief, i.e., having "acted fairly and without fraud or deceit as to the controversy in issue." Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814–15 (1945). This difference weighs against Vision West's argument that the sanctions judgment was a new debt, not a judgment on the underlying substance, because "in this respect a default judgment entered pursuant to Pa. R .Civ. P. 4019(c)(3) is comparable to a judgment entered after hearing" – a determination on the underlying substance of a claim. Miller Oral Surgery, Inc. v. Dinello, 342 Pa. Super. 577, 581 (1985).

shifting for different kinds of discovery misconduct). Fees shifted as a sanction under these provisions, as well as debts incurred because of a contempt sanction under Pa. R. Civ. P. 4019(c)(4), do appear to be new debts, not extensions or transformations of the underlying debt. New sanctions debts could have a character different from the primary debt and, depending on the circumstances, are potentially nondischargeable under 11 U.S.C. §523(a)(6).

Pa. R. Civ. P. 4019(g) permits a shifting of "reasonable expenses, including attorney's fees, incurred in obtaining the order of compliance and the order for sanctions" to the disobedient party. A contempt sanction under Pa. R. Civ. P. 4019(c)(4) can do much the same thing.

In its motions for sanctions, Vision West did not specifically seek sanctions or contempt in the form of attorney's fees, probably because it already had the contractual right to shift fees. Just as with the principal debt, this court must look past the particular form of the debt to its underlying substance, because "[w]hether contempt sanctions are nondischargeable accordingly depends not on whether they are labeled as 'contempt,' but on whether the conduct leading to them was 'willful and malicious.'" In re Suarez, 400 B.R. 732, 737 (B.A.P. 9th Cir. 2009), aff'd, 529 F. App'x 832 (9th Cir. 2013). To the extent that the fees were incurred due to the Debtor's willful and malicious conduct during the discovery process and were the kind of fees that could have been shifted to the Debtor by a Rule 4019 order (in the absence of a fee-shifting provision of the contract), the attorney's fees are nondischargeable.

**3.**

The State Court held a pre-trial conference on April 1, 2015. The State Court directed Vision West, the Debtor and the other State Court Defendants to exchange documents. The Debtor was informed of his obligation to produce documents on that date. He never produced

the relevant documents. So the Debtor's sanctionable discovery misconduct dates from the time of the pre-trial conference.

Attorney's fees incurred before April 1, 2015 were shifted to the Debtor under a contractual fee-shifting provision and were not occasioned by willful and malicious conduct. Such fees were the usual costs of bringing a breach of contract lawsuit, and represented the normal pre-trial process. They retain the character of the principal debt and are dischargeable.

Fees incurred after that date are attributable to the Debtor's discovery misconduct, and could be shifted either under the contract or as a sanction or contempt. I conclude that these fees were incurred by the Debtor's willful conduct because he knew of his court imposed discovery obligations and did not fulfill them.

The Debtor was informed that he would have to produce the relevant documents at the September 26, 2016 sanctions hearing. See Finding of Fact Nos. 8-12. Representing that he could get the documents if given more time, the Debtor induced Vision West to agree to three (3) continuances. By the time the State Court lost patience with this misconduct, the Debtor had drawn the sanctions proceeding out to mid-February 2017 – over five (5) additional months – and still did not produce the documents or seek relief from the orders requiring production. This long process would have been unnecessary if the Debtor had either complied or refrained from representing that he was just about to comply. The Debtor's actions in lengthening the proceedings - for no identifiable just cause – had the inevitable result of running up Vision West's legal fees. Simply put, it doesn't normally cost $25,000.00 to get a default judgment.

Vision West's evidence shows that the Debtor was under court-imposed obligations and that he knew of those obligations. Further, he had to know that failing to comply with his discovery obligations would cause harm and increase costs. Yet, he still failed to comply. The

14

only reasonable inference to be drawn from these facts is that the Debtor was acting in bad faith -- in bankruptcy nomenclature, a voluntary action taken with a substantial certainty of producing injury, see Coley, 433 B.R. at 497 (citing In re Conte, 33 F.3d 303, 307–09 (3d Cir.1994)). Further, there can be no doubt that the Debtor's actions were malicious within the meaning of 11 U.S.C. §523(a)(6) in that they were without just cause or excuse, and wrongful.

In short, the attorney's fees Vision West incurred after the April 1, 2015 State Court pre-trial conference constituted a debt for a willful and malicious injury caused by the Debtor.[9]

### 4.

Vision West attached its counsel's billable hours records to an earlier motion for sanctions. Ex. B. These records show $7,980.00 in attorney's fees incurred up to the date of the pre-trial conference. Every C.P. Docket entry after that date relates solely to Vision West's attempts to force the Debtor to comply with discovery. The judgment entered by the State Court included $25,345.00 for attorney's fees. I conclude that the difference, $17,365.00, were fees "incurred in obtaining the order of compliance and the order for sanctions," which may be shifted to a disobedient party for discovery misconduct. Pa. R. Civ. P. 4019(c)(4), (g)(1).[10]

---

[9]  I have not lost sight of the fact that Addison Dane was the primary defendant in the State Court and that, arguably, it was Addison Dane's misconduct that led to the entry of the default judgment. In the present circumstances, the distinction between Addison Dane and the Debtor is legally irrelevant. As the controlling shareholder and officer of Addison Dane, the Debtor is personally liable for tortious action personally committed while acting as an agent of the corporate entity under the "participation theory" doctrine. See, e.g., In re Modena, 582 B.R. 643, 653 (Bankr. W.D. Pa. 2018). As of Estrada's role and responsibility, I express no opinion.

[10]  To be clear, I do not find that the State Court did shift fees pursuant to the statute. I am simply using those provisions as a shorthand for the kind of misconduct that is willful and malicious misconduct under the Pennsylvania Rules of Civil Procedure.

Any other result would lead to perverse consequences. If I were to find that the fees were incurred because of the Debtor's discovery misconduct, but that they retained their character as contractually-shifted dischargeable debts, the fee-shifting clause would work against Vision West. The fee-shifting clause, intended by the parties to protect Vision West, would then have allowed the Debtor to discharge the attorney fee portion of his debt even though the fees were especially high because of the Debtor's sanctionable, willful, and malicious conduct. This result is compelled neither by precedent nor by logic.

The guiding principal of this analysis has been to determine the underlying character of the subject debt. The underlying substance of the attorney's fees incurred after April 1, 2015 was not necessary and ordinary costs of litigation, but a debt inflated by the Debtor's discovery misconduct.

## VI. CONCLUSION

In the end, it is simple enough to state the result of this adversary proceeding.

The Debtor committed sanctionable misconduct in State Court. Vision West obtained a default judgment on a claim for breach of a contract that included an attorney's fees-shifting provision and the judgment included a damages component for attorney's fees.

Vision West has not shown that the unpaid loan and attorney's fees included in the judgment incurred before April 1, 2015, were caused by willful and malicious conduct; rather, the unpaid loan and that component of the legal fees included in the judgment fees appear to be ordinary contractual obligations that are dischargeable. However, Vision West has met its burden and shown that the attorney's fees incurred after April 1, 2015 were incurred as a result

of the Debtor's willful and malicious conduct. Therefore, the fees included in the judgment that were incurred after that date are nondischargeable.

As stated earlier, a court may grant judgment in favor of the non-moving party if the undisputed facts demonstrate that the party is entitled to judgment as a matter of law, see n.1, supra., and I have concluded that it is appropriate to do so here (in part).

For the reasons stated above, the Motion will be granted in part and denied in part. I will enter an order determining that $17,365.00 is nondischargeable and that the balance of the debt is dischargeable.

**Date: September 11, 2018**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**